MANDATE

21-217-cv
*Crews v. City of Ithaca*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of May, two thousand twenty-two.

PRESENT:     JOHN M. WALKER, JR.,
                       GUIDO CALABRESI,
                       JOSÉ A. CABRANES,
                                   *Circuit Judges.*

_____

SARAH CREWS,

                           *Plaintiff-Appellant,*                                21-217-cv

                     v.

CITY OF ITHACA, JOHN R. BARBER, Chief of Police,
PETE TYLER, Chief of Police, DENNIS NAYOR,

                           *Defendants-Appellees.*

_____

**FOR PLAINTIFF-APPELLANT:**          KELLY K. CURTIS (Edward E. Kopko, *on the brief*), Ithaca, NY.

**FOR DEFENDANTS-APPELLEES:**          MAURY B. JOSEPHSON (Earl T. Redding, Roemer Wallens Gold & Mineaux LLP, Albany, NY, *on the brief*), Assistant City Attorney, City of Ithaca, Ithaca, NY.

Appeal from an order of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

1

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court be and hereby is **AFFIRMED**.

Sarah Crews appeals the District Court's order granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against her claims brought under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296. Crews—an openly gay female who identifies as gender non-conforming—alleges that her employer, the Ithaca Police Department, and three of its Police Chiefs (together, the "IPD") created a hostile work environment; disciplined Crews because of her gender identity and sexual orientation; and retaliated against Crews for her complaints regarding the IPD's implementation of its same-gender search and jailing policy. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review de novo . . . a district court's grant of summary judgment." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (citation omitted). "[W]e may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the District Court . . . ." *Ferran v. Town of Nassau*, 471 F.3d 363, 365 (2d Cir. 2006).

## I.

We review Crews's Title VII discrimination claim under the familiar burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Crews "must first establish a *prima facie* case of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). If she does, "[t]he burden then shifts to the [IPD] to articulate some legitimate, nondiscriminatory reason for the disparate treatment." *Id.* (citation and internal quotation marks omitted). If it does, "the burden shifts back to [Crews] to prove that [IPD's] reason was in fact pretext for discrimination." *Id.* (citation and internal quotation marks omitted). The same analysis applies to Crews's discrimination claim under the NYSHRL. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

We assume without deciding that Crews has established a *prima facie* case. IPD, in turn, has advanced Crews's history of misconduct as its nondiscriminatory reason for forfeiting Crews's vacation time, suspending her without pay, and initiating termination proceedings. IPD found that Crews violated its Rules and Regulations, on several occasions, by *inter alia* shouting, directing profanity at, and disregarding orders from her commanding officers; inappropriately arresting a minor for possession of alcohol; threatening the recipient of a parking ticket; and violating traffic laws.

While Crews takes issue with IPD's disciplinary findings, she does not contest the underlying conduct that led to her discipline. For example, she attests that her commanding officers initiated the hostile behavior, but not that she avoided raising her voice and using profanity; that her objections to her commanding officers' orders were reasonable, but not that she followed their orders; that the minor resisted arrest, but not that such arrest was consistent with IPD rules; that the recipient of a parking ticket subsequently described Crews as tough but fair, but not that she made no threats to him; and that Crews thought the crossing guard was joking when he asked Crews not to pull forward, but not that she obeyed all traffic commands. As Crews does not contest the facts underlying IPD's disciplinary actions, we will not "sit as a super-personnel department that reexamines [its] judgments." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73 (2d Cir. 2015) (citation and internal quotation marks omitted).

Thus, the remaining question under *McDonnell Douglas* is whether Crews has adduced sufficient evidence from which a reasonable jury could conclude that this discipline was pretext for discrimination. *See Vega*, 801 F.3d at 83. She has not.

With regard to her use of profanity in the workplace, Crews claims that similarly situated comparators were treated differently. *See Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). Specifically, Crews attests that a lieutenant at a daily shift briefing on November 6, 2016, referred to his IPD subordinates using derogatory, profane terms. No reasonable jury could find that this incident, described in one sentence and without context, bears a "reasonably close resemblance" to Crews's repeated use of profanity, which involved raising her voice and, in many cases, disregarding orders. *See id.* at 40. And Crews's assertion that "[t]here is no evidence that similar behavior by other officers was either investigated or disciplined by the IPD," Reply Br. 6, is unavailing, because it is Crews's burden to demonstrate pretext, for instance by showing the absence of discipline in similar circumstances. *See Vega*, 801 F.3d at 83.

Nor could a reasonable jury find pretext because in several instances of claimed misconduct Crews was reacting to the purportedly discriminatory application of IPD's same-gender search and jailing policy. The orders to which Crews objected were not themselves cognizable as adverse employment actions under Title VII, as they related merely to her "job responsibilities." *See Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). That Crews's profanity and insubordination occurred in reaction to these orders does not call into question IPD's disciplinary decisions, as "[a]n employer does not violate Title VII when it takes adverse employment action against an employee to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work of the enterprise." *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000).

Nor has Crews adduced evidence that IPD's disciplinary notices were pretextual because they relied upon stereotypes. To the contrary, these notices describe behavior that violates IPD's policies. Nothing in the record suggests that Crews was evaluated "by assuming or insisting that

3

[she] matched the stereotype associated with [her] group." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989).

## II.

The *McDonnell Douglas* burden-shifting framework applies to Crews's retaliation claims brought pursuant to both Title VII and the NYSHRL. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). For substantially the same reasons as with her discrimination claims, no reasonable jury could find that IPD's proffered reason for disciplining Crews—her substantially admitted record of misconduct—"was merely a pretext for an unlawful [retaliatory] motive." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89 (2d Cir. 2019) (citation and internal quotation marks omitted). Indeed, mere "temporal proximity"—the only factor that distinguishes Crews's claim of pretext in the retaliation context from her claim of pretext in the discrimination context—"is insufficient to satisfy [her] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam).

## III.

To establish her hostile work environment claim, Crews must establish that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [Crews's] employment and create an abusive working environment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (citation omitted). We reject Crews's lead argument—that IPD's requiring her to search and jail women under its same-gender policy was inconsistent with her gender identity—because it was not raised in the District Court and is waived. *See Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006). In addition, an inappropriate 2007 or 2008 prank involving a fake driver's license was an "ordinary tribulation[] of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing," and therefore no reasonable jury could find it actionable. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). Nor could a jury find actionable the series of disciplinary notices received by Crews because, as discussed above, there is no "evidence to suggest that [IPD's discipline of Crews] was motivated by gender discrimination" or retaliation. *Demoret v. Zegarelli*, 451 F.3d 140, 150 (2d Cir. 2006).

## CONCLUSION

We have reviewed all of the arguments raised by Crews on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the January 26, 2021, order of the District Court.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

4